Robert HEINSOHN, Appellant,

v.

TRANS–CON ADJUSTMENT
BUREAU, Appellee.

No.  2–96–157–CV.

Court of Appeals of Texas,
Fort Worth.

Feb. 13, 1997.

Rehearing Overruled May 15, 1997.

John Wright, Tina M. Colwell, Grand Prairie, for appellant.

Mark L. Greer, Fort Worth, for appellee.

Before LIVINGSTON, DAUPHINOT and HOLMAN, JJ.

## OPINION

HOLMAN, Justice.

Robert Heinsohn sued his former employer, Trans–Con Adjustment Bureau, alleging that he suffered a work-related injury and that the company wrongfully terminated his employment because the owner anticipated that the injury would result in a workers' compensation claim. As soon as Heinsohn rested his case, the trial court granted the company's motion for a directed verdict on grounds that there was no evidence of damages. Heinsohn appeals. We reverse and remand.

### Retaliatory Discharge

■ Heinsohn based his cause of action on the provisions of article 8307c of the Texas Revised Civil Statutes [1]:

> No person may discharge or in any other manner discriminate against any employee because the employee has in good faith filed a claim, hired a lawyer to represent him in a claim, instituted, or caused to be instituted, in good faith, any proceeding under the Texas Workmen's Compensation Act, or has testified or is about to testify in any such proceeding.

Act of April 20, 1971, 62nd Leg., R.S., ch. 115, 1971 Tex.Gen.Laws 884, *amended by* Act of May 12, 1993, 73rd Leg., R.S., ch. 269, § 1, 1993 Tex.Gen.Laws 1235 (current version at TEX.LABOR CODE ANN. § 451.001 (Vernon 1996)). The purpose of the statute is to protect persons who are entitled to benefits under the workers' compensation statute and to prevent them from being discharged because they take steps to collect the benefits. *Carnation Co. v. Borner,* 610 S.W.2d 450, 453 (Tex.1980).

■ Whether there is a causal connection between an employee's termination and claim for workers' compensation benefits is a fact question on which the employee has the burden of proof by either direct or circumstantial evidence. *Palmer v. Miller Brewing Co.,* 852 S.W.2d 57, 61 (Tex.App.—Fort Worth 1993, writ denied). Evidence of a

1. Effective Sept. 1, 1993, the substance of art. 8307c of the Texas Revised Civil Statutes later became § 451.001 of the Texas Labor Code.

causal connection can include the employer's knowledge of the claim and a negative attitude by the employer toward the employee's injured condition. *Id.* Once the employee establishes a causal link between the claim and the termination, the burden shifts to the employer to rebut the allegations by showing a legitimate reason for the discharge. *Id.* Moreover, when an employer knows an employee is injured, the employer may not frustrate the purposes of the workers' compensation law by discharging the employee before the claim can be filed. *Mid–South Bottling Co. v. Cigainero,* 799 S.W.2d 385, 389 (Tex. App.—Texarkana 1990, writ denied). Merely by the act of notifying the employer of the injury, an injured employee takes steps toward "instituting a compensation proceeding" within the meaning of the statute. *Palmer,* 852 S.W.2d at 61; *Worsham Steel Co. v. Arias,* 831 S.W.2d 81, 84 (Tex.App.—El Paso 1992, no writ).

### Evidence

The evidence shows that in December, 1989, the company employed Heinsohn as its collections manager. He alleged and testified that while seated and working at his office desk on October 8, 1990, a leg of his chair broke and he fell backward, injuring his back. Heinsohn testified that the company's owner overheard him say the words "workman's comp," and then:

> [The owner] come flying out of his office, shook his finger in my face like this and said, "You make a workman's comp claim, you're fired."

> And I laughed when he said that because at that point I had no—I mean, it was a nonissue. And he says, "You think I'm joking? I'll give you a list of the people I've fired for trying to make comp claims against me."

On the morning of October 15, 1990, Heinsohn told the owner that because of continuing discomfort from the back injury, he would have to see a physician and file a workers' compensation claim. Later the same afternoon, his employment was terminated.

### Damages Claimed

Without detailing all of the evidence on damages, we note that Heinsohn testified that the termination of employment canceled his employee medical and dental benefits, and that the insurer refused to pay $2,000 for dental work he had done before he was discharged, and that he incurred another $9,000 in medical bills that he said would have been covered by the terminated insurance. Entries included in a Texas Employment Commission eligibility review form introduced by the company's attorney and admitted in evidence during Heinsohn's cross-examination show that Heinsohn left the company because he was "fired," and that his monthly pay rate at the company had been $2,700. He testified that he received unemployment compensation for only two weeks because he was injured and unable to work regularly, and he told the jury about temporary jobs he had held after the company terminated him, and about the length of time he was out of work. The company's attorney also questioned Heinsohn about a Texas Employment Commission computer printout in evidence that listed a total of $4,886.74 in wages he received from the temporary jobs that followed his discharge by the company. Heinsohn's testimony was heard without objection and was uncontroverted.

### The Company's Motion for Directed Verdict

The company's attorney moved for a directed verdict on these grounds:

> Mr. Heinsohn has not presented any evidence of his losses due to wages, his entitlement to recovery on any benefits ... Even if you take as true his allegations of costs, there is no damages....

Nevertheless, when a trial court is presented with a motion for directed verdict, it must (1) accept as true all evidence tending to support the nonmovant's contentions, (2) construe that evidence liberally in favor of the nonmovant, and (3) disregard any contrary evidence and all contrary inferences. *White v. Southwestern Bell Tel. Co. Inc.,* 651 S.W.2d 260, 262 (Tex.1983). A trial court may not pass on the credibility of witnesses as part of its evaluation of a motion for directed ver-

dict. *Sargent v. Smith*, 863 S.W.2d 242, 248 (Tex.App.—Beaumont 1993, no writ).

### Disposition of the Complaint on Appeal

 In a single point of error, Heinsohn asserts that because there was evidence of damages, the trial court erred in granting a directed verdict. We agree. With proper instructions in its charge to the jury, a trial court may easily limit a jury's consideration of various elements of damages to only those elements that are sufficiently raised by the evidence. *See, e.g.*, 2 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 29.01, 29.02 (1989). A directed verdict is warranted only when the entire record shows that no other verdict could have possibly been rendered, that is, when reasonable minds can reach only one conclusion from the entire evidence and that the winning party was and is entitled to judgment as a matter of law. *Id.*

Here, there was circumstantial evidence that Heinsohn was fired in retaliation for having told the company owner that he would file a workers' compensation claim. There was direct documentary evidence of the dollar amounts of wages Heinsohn earned while employed by the company and the amounts of temporary wages he earned from jobs he held briefly after the company terminated him. The time-lines applicable to the various wages were in evidence. Whether simple arithmetic would have demonstrated a "bottom line" dollar amount of lost wages for the jury to consider was a matter that remained for summation of evidence during the closing argument had it not been pre-empted by the directed verdict.

 Therefore, there was some evidence, more than a scintilla, to support the submission of issues on whether Heinsohn's termination was a wrongful retaliation for his worker's compensation claim and if so, whether it caused him any loss of wages as damages. Accordingly, we need not address the evidence of other damages Heinsohn alleged, such as dental and medical expenses and the claim that because he was fired he was unable to continue to pay the mortgage on his home, or mental anguish. The point of error is sustained.

The judgment of the trial court is reversed and the cause is remanded for a new trial.